# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LATIFA & HALAL KITCHEN, LLC
a California limited liability company,

       Plaintiff,                Case No.

v.                                 Hon.

HAROUF CORP, a Michigan domestic
profit corporation; ALI JADALLAH
REDA; MOHAMMED REDA; ELI
BAWAB GATES; XOXO
INVESTMENTS, LLC, a Michigan
limited liability company;
MOHAMED ELMAKAKY; RUAA
CHEMALI; and AHMAD M. EL AZAZ

       Defendants.

---

Samuel L. Estenson (P82414)
DEVER, EBY & ISSA, PLLC
*Attorneys for Plaintiff*
301 N. Main St., 2nd Floor
Ann Arbor, MI  48104
(734) 994-1295
sle@deloofdevereby.com

---

## <u>VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES</u>

Plaintiff Latifa & Halal Kitchen Inc., d/b/a Fatima's Grill ("Plaintiff"), sues

Defendants Harouf Corp, Ali Jedallah Reda, Mohammed Reda, Eli Bawab Gates,

XOXO Investments, LLC ("XOXO"), Mohamed Elmakaky, Ruaa Chemali, and

Ahmad M. El Azaz (collectively "Defendants"), and alleges as follows:

## **INTRODUCTION**

1.     This is an action seeking preliminary and permanent injunctive relief, and damages, for trademark infringement, false designation of origin, unfair competition, and trademark dilution in violation of sections 32(1) and (2) and 43(a) and (c) of the Trademark Act of 1946 (or Lanham Act), 15 U.S.C. §§ 1114(1)-(2), 1125(a), 1125(c), misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1839 and Michigan's Uniform Trade Secrets Act ("MUTSA"), MCL § 445.1901 *et seq.*, unfair trade practices in violation of section 3 of the Michigan Consumer Protection Act, MCL § 445.903 (as amended), violations of common law trademark protections, and for breach of contract and tortious interference with a contract under Michigan law.

2.     Defendants recognized a good thing in Plaintiff's "Fatima's Grill" restaurant concept, a Lebanese-Mexican fusion restaurant experience, but instead of sharing in Plaintiff's success by benefiting from a successful Fatima's Grill franchise, they tried to take everything for themselves at Plaintiff's expense. Defendant Harouf Corp enjoyed a license to display the Fatima's Grill Marks[1] and name at the franchised location that it opened in Dearborn, Michigan, in space sublet from Defendants XOXO and its owners, Elmakaky and Chemali. The space was next door to XOXO's new nightclub, XOXO Hookah Lounge, which had an agreement

---

[1] *See infra* at pp. 7-8.

to serve Fatima's Grill food to patrons seated inside the club. Harouf Corp's licensing rights ended, however, when Defendant Harouf Corp unilaterally stopped communicating with Plaintiff and conspired with XOXO, Elmakaky, Chemali, Mohammed Reda and El Azaz to commence operation of a competitive business concept in the same location, in violation of Defendant Harouf Corp's contractual obligations to Plaintiff.

3.     At the time of filing, Defendant Harouf Corp and its owners, Defendants Gates and Ali Reda, continue to operate a competing Lebanese-Mexican fusion concept restaurant at the same location, in concert with XOXO, Elmakaky, Chemali, Reda's brother, Defendant Mohammed Reda, and El Azaz, the former head chef at the Dearborn Fatima's Grill franchise location. Defendants are using the Fatima's Grill protected Marks and the proprietary Fatima's Grill Franchise System,[2] including Fatima's Grill recipes, methods, layout and design, and more, causing significant harm to Plaintiff and to consumers. This is in violation of the express terms of the Franchise Agreement between the parties, violates federal and state law, and constitutes tortious interference by Defendants XOXO, Elmakaky, Chemali, Ali Reda, Mohammed Reda, and El Azaz.

4.     Plaintiff seeks an immediate injunction: (1) enjoining Defendants Harouf Corp, Gates, and El Azaz from breaching their non-competition covenants;

---

[2] *See infra* at p. 7.

(2) enjoining Defendants from using any of Plaintiff' Fatima's Grill Marks or any confusingly similar name, device, mark, service mark, trademark, trade name, slogan, or symbol to obtain revenue for their new restaurant or any other individual or company that is not the franchised business; (3) enjoining Defendants from using any of Plaintiff's trade secrets or confidential information; and (4) enjoining Defendants XOXO, Elmakaky, Chemali, Ali Reda, Mohammed Reda, and El Azaz from tortiously interfering with the Franchise Agreement or any other valid and binding agreement between Plaintiff and any Defendant. In addition, and pursuant to section 35 of the Lanham Act, 15 U.S.C. § 1117, the DTSA, and Michigan law, Plaintiff seeks compensatory damages, Defendants' profits from the violations described herein, statutory damages, punitive and exemplary damages, and the costs and attorney fees incurred in bringing this action.

## <u>JURISDICTION AND VENUE</u>

5.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff brings this action against Defendants under 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a) as to claims asserted under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and over the claim of unfair competition pursuant to 28 U.S.C. § 1338(b). This Court also has original jurisdiction as to Plaintiff's claim asserted under the DTSA, 18 U.S.C. § 1839.

6.      This Court has original subject matter jurisdiction as to the claims

other than those based on the Lanham Act and DTSA, under 28 U.S.C. § 1367, because those claims are sufficiently related to the claims brought under the Lanham Act that they form part of the same case or controversy.

7.      Further, an actual justiciable controversy now exists between the parties, and the requested relief is proper under 28 U.S.C §§ 2201-2202.

8.      Venue is appropriate in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district, and Defendants are subject to this Court's jurisdiction with respect to this action in this district.

## **PARTIES**

9.      Plaintiff Latifa & Halal Kitchen, LLC is a California limited liability company, having a principal place of business in Bell, California. The sole member resides in California.

10.      Defendant Harouf Corp is a Michigan for-profit company, having a principal place of business in Wayne County, Michigan.

11.      Defendant Ali Jadallah Reda is an officer and director of Harouf Corp, and upon information and belief, is a resident of the State of California conducting business in Wayne County, Michigan.

12.      Defendant Eli Gates is an officer and director of Harouf Corp, and upon information and belief, is a resident of the State of California conducting

business in Wayne County, Michigan.

13.     Defendant XOXO Investments, LLC is a Michigan limited liability company, having a principal place of business in Dearborn, Michigan. Upon information and belief, XOXO's members are residents of Michigan.

14.     Upon information and belief, Defendant Mohamed Elmakaky is a member and owner of XOXO, and a resident of Wayne County, Michigan conducting business in Wayne County, Michigan.

15.     Upon information and belief, Defendant Ruaa Chamali is a member and owner of XOXO, and a resident of Wayne County, conducting business in Wayne County, Michigan.

16.     Defendant Mohammed Reda is, upon information and belief, a resident of Wayne County, Michigan conducting business in Wayne County, Michigan.

17.     Defendant Ahmad M. El Azaz is, upon information and belief, a resident of Wayne County, Michigan conducting business in Wayne County, Michigan.

## **FACTS**

18.     Fatima's Grill is the franchisor of a system providing a Lebanese-Mexican restaurant experience to the general public (the "Fatima's Grill Franchise System"). Fatima's Grill licenses others to operate Lebanese-Mexican restaurants

under the federally-registered trademark "Fatima's Grill," and to utilize additional trademarks protected by common law, including distinctive graphic logos for Fatima's Grill (collectively the "Fatima's Grill Marks").

19.     The Fatima's Grill Franchise System is likely the first Lebanese-Mexican restaurant in the United States, and certainly the first one to franchise the concept.

20.     The Fatima's Grill Franchise System has received extensive social media and news coverage, including from the Food Network, Brooklyn Magazine, Eater Los Angeles, Foodbeast, Gothamist, and many local news networks, and, with respect to Defendants' Dearborn location, Eater Detroit and the Detroit News.

21.     Through the expenditure of time, skill, effort, and money, Plaintiff developed  the Fatima's Grill Marks, which have been used in the development, organization, and operation of a franchised system of Lebanese-Mexican restaurants (each a "Fatima's Grill") offering Lebanese-Mexican food to the general public (the "Fatima's Grill Brand").

22.     Fatima's Grill entered into Franchise Agreements for the operation of Fatima's Grill restaurants at various locations throughout the United States, pursuant to which Fatima's Grill licenses others the right to operate Fatima's Grill restaurants using the Fatima's Grill Marks and Franchise System (each a "Franchise Agreement").

23.     Plaintiff developed the Fatima's Grill Marks for use in the operation of the licensed Fatima's Grill restaurants, which include the following principal trademark, which has been registered by Plaintiff on the Principal Register of the United States Patent and Trademark Office ("USPTO"):

| Mark | Registration No. | Registration Date |
|---|---|---|
| Fatima's Grill | 90593468 | February 15, 2022 |

24.     The foregoing registration is valid, subsisting, in full force and effect, and covers the goods and services identified in the registration certificate.

25.     Plaintiff also developed additional trademarks, protected by common law, including graphic logos for Fatima's Grill:

 

26.     In addition, Plaintiff uses certain distinctive imagery in every Fatima's Grill, including images of its proud founder, Ali Elreda.

27.     The Fatima's Grill Marks have been used exclusively by Plaintiff and its designated licensees in commerce in connection with the operation of Fatima's Grill since 2016. Since that time, Fatima's Grill Franchise System has grown to nine locations in four states (with additional locations opening in the near future in multiple additional states).

28.     The Fatima's Grill Marks are a valuable asset of substantial and inestimable worth to Plaintiff. The Fatima's Grill Marks are a symbol of a unique, high quality restaurant experience served by Fatima's Grill. Fatima's Grill has a vital economic interest in protecting its name and the Fatima's Grill Marks. The preservation and protection of its reputation and the Fatima's Grill Marks are essential to the maintenance of the quality of other Fatima's Grill locations and the goodwill and reputation associated with them.

29.     The Fatima's Grill Franchise System includes the manner in which the franchisee is licensed to operate a Fatima's Grill, and the method of doing business, and includes pricing and promotional information, recipes, marketing materials and strategies, business and operations manuals and procedures, financial information, sales techniques, business methods, and other confidential and proprietary information (the "Trade Secrets and Confidential Information"),

as designated and adopted by Fatima's Grill.

30.     Plaintiff's franchisees, including Defendant Harouf Corp, have access to, and agree to maintain the confidentiality of, the Fatima's Grill Franchise System and the Trade Secrets and Confidential Information.

31.     Plaintiff's Trade Secrets and Confidential Information are not generally known in the industry, and Plaintiff derives economic value and a competitive advantage in the marketplace from its secrecy.

32.     Plaintiff has invested substantial sums of money and time researching and developing its Trade Secrets and Confidential Information.

33.     Plaintiff maintains the confidentiality of its Trade Secrets and Confidential Information by disclosing such information to authorized franchisees under written franchise agreements with confidentiality obligations; restricting access on a need-to-know basis; and storing the information in a secure manner.

34.     Plaintiff also protects access to its Trade Secrets and Confidential Information by requiring authorized franchisees to agree to reasonable in-term and post-term noncompetition covenants that prohibit franchisees from having a direct or indirect interest in competitive businesses, and by requiring certain franchisee employees to execute nondisclosure and noncompetition agreements.

**The Dearborn Franchise Agreement**

35.     On or about November 08, 2022, Fatima's Grill entered into a

Franchise Agreement with Defendant Harouf Corp in connection with the operation of a Fatima's Grill located in Dearborn, Michigan (the "Dearborn Franchise Agreement"), A copy of the Dearborn Franchise Agreement is attached hereto as Exhibit 1.

36.     Defendant Gates represented to Plaintiff that he was Harouf Corp's sole owner and shareholder, and executed a Principal Owner's Guaranty to the Dearborn Franchise Agreement (the "Guaranty"). A copy of the Guaranty is attached hereto. (Exhibit 1 at pp. 59-60, Ex. C to Franchise Agreement).

37.     From December 2022 through August 2023, Defendants Harouf Corp and Gates (together, the "Franchisee Defendants") worked to open a Fatima's Grill in Dearborn, Michigan, learning every aspect of the Fatima's Grill System.

38.     Plaintiff provided ongoing training, support, and guidance to Franchisee Defendants. In furtherance of these efforts, in or about December 2022 Plaintiff provided Franchisee Defendants access to its confidential Operations Manual (the "Manual"), which contains operating instructions and additional information relevant to the operation of a Fatima's Grill including Trade Secrets and Confidential Information. The Manual, which was over 100 pages in length, contained a variety of information, including how to obtain supplies for a Fatima's Grill, layout and design information, training guidance and policies, equipment information, point-of-sale system information, social media guidelines, marketing

plans, signage guidelines, and all information needed to operate a Fatima's Grill restaurant.

39.     In addition, as part of the training and support provided to franchisees, multiple members of Plaintiff's leadership team flew to Dearborn, training the kitchen staff for almost a month to prepare food the Fatima's Grill way, and training managers and others for weeks regarding marketing and social media and to assist with the opening.

40.     Franchisee Defendants were thus provided the roadmap to open a successful Lebanese-Mexican fusion restaurant and were also provided business relationships as well as other connections in the industry in furtherance of such efforts.

41.     Unfortunately, however, Franchisee Defendants became associated with third-parties, including Defendant Ali Reda, and Defendant XOXO and its owners, Defendants Elmakaky and Chemali, who became interested in stealing or co-opting the Fatima's Grill Franchise System.

42.     Franchisee Defendants associated with Defendant Ali Reda when, upon information and belief, he was made a 50% shareholder of Harouf Corp, without Plaintiff's approval, in breach of the Dearborn Franchise Agreement and the Guaranty. (*See* Ex. 1 at Sections 9.2-9.3)

43.     While Defendant Gates had represented to Plaintiff that Defendant

Ali Reda was his "partner", he did not disclose Reda's ownership interest in Harouf Corp, and in fact executed a Guaranty covenanting that he alone was 100% shareholder of Defendant Harouf Corp. (*See* Ex. 1, pp. 59-60)

44.     Franchisee Defendants and Ali Reda associated with Defendants XOXO, Elmakaky and Chemali because the new Fatima's Grill franchise's location was next to, and sublet space from, XOXO Hookah Lounge, a new nightclub owned by Defendant XOXO.

45.     The parties initially worked well together, envisioning a joint grand opening in which Fatima's Grill and XOXO Hookah Lounge would open on the same day, and agreeing to a special arrangement where XOXO would serve Fatima's Grill food directly to patrons seated inside XOXO Hookah Lounge.

46.     However, the relationship quickly began to raise concerns for Plaintiff, where XOXO and Elmakaky began to act like they owned or controlled the Fatima's Grill franchise, with XOXO's owner Elmakaky trespassing in the kitchen area on multiple occasions and demanding that food be served to XOXO patrons first before other orders were fulfilled.

### The Soft Opening

47.     On or about August 16, 2023, Franchisee Defendants opened the Fatima's Grill location for business in conjunction with the soft opening of XOXO Hookah Lounge.

48.     Defendants heavily promoted the opening, prominently relying on the Fatima's Grill Marks and Fatima's Grill Brand to lead the public to associate Fatima's Grill with the location and with XOXO Hookah Lounge.

49.     The Fatima's Grill opening was a "soft" opening, and Plaintiff continued to provide ongoing training and support to Franchisee Defendants, with Plaintiff's personnel continuing to train on-site at the location.

50.     Even with a "soft" opening, the new Fatima's Grill location was well-received and instantly successful.

51.     Perhaps as a result of this success, and following Franchisee Defendants' association with Defendants Ali Reda, XOXO, Elmakaky and Chemali, Defendants (while continuing to benefit from the Fatima's Grill Marks, the Fatima Grill Brand, the Fatima's Grill Franchise System, the Trade Secrets and Confidential Information, and the relationships/connections and ongoing training and support provided by Plaintiff to Franchisee Defendants) conspired to start a competitive Lebanese-Mexican restaurant in the same location, in violation of the Dearborn Franchise Agreement.

**The Scheme**

52.     To execute their plan, on or about September 26, 2023, Defendants caused XOXO to issue a Notice to Quit to Franchisee Defendants, purporting to "evict" them on the basis of fabricated violations of the sublease.

53.     Per the Notice to Quit, Franchisee Defendants had until November 1, 2023 to vacate the space or face eviction proceedings.

54.     Around this time, security camera footage showed Defendant Elmakaky trespassing in the Fatima's Grill kitchen on multiple occasions and, upon information and belief, accessing confidential and proprietary information stored therein.

55.     On one occasion, when the Fatima's Grill alarm system was triggered by his intrusion, upon information and belief Defendant Elmakaky unplugged the security camera system to prevent Plaintiff from seeing what he was doing. When the police responded to the alarm, upon information and belief Elmakaky represented that he was the owner of the real estate and that the alarm was in error.

56.     Unwilling to wait even a matter of weeks to implement their scheme, Defendants abruptly closed the Fatima's Grill location on or around October 9, 2023, without explanation or justification, but they did not cease operations, instead continuing to a run a competing Lebanese-Mexican fusion restaurant.

57.     In furtherance of the scheme, Defendant Ali Reda, who was a signatory to the XOXO sublease, executed a "Termination of Sublease Agreement and Full Release" with XOXO, forging Defendant Gates' signature and purporting to surrender the space to XOXO.

58.     Defendants Gates and Ali Reda also immediately caused Harouf

Corp to be dissolved by the state of Michigan on October 11, 2023, upon information and belief in a transparent but legally meaningless[3] attempt to avoid liability for the scheme.

59.    Defendants also began removing unknown items and equipment from the Fatima's Grill franchise location and removed certain interior signs containing the Fatima's Grill Marks.

60.    Plaintiff was able to retrieve the signs and a POS kiosk, a recipe book, and several items containing Trade Secrets and Confidential Information from the location.

61.    However, Defendants retained other supplies, equipment and materials bearing the Fatima's Grill Marks, and other materials that constitute or contain Trade Secrets and Confidential Information, and continued to use them in breach of the Dearborn Franchise Agreement, the Guaranty, and state and federal law.

62.    Upon information and belief, Defendants also retained the head chef who had been employed by the Fatima's Grill Dearborn franchise, Defendant El Azaz.

---

[3] *See* MCL 450.1834; *Flint Cold Storage v. Dep't. of Treasury*, 285 Mich. App. 483, 495, 776 N.W.2d 387, 394 (2009) ("[A] dissolved corporation may continue to 'sue and be sued in its corporate name ... in the same manner as if dissolution had not occurred,' MCL 450.1834(e).").

63.     On or about September 20, 2023, Defendant El Azaz had executed a Nondisclosure and Non-Competition Agreement with Plaintiff upon beginning employment with a Fatima's Grill franchise, covenanting not to share confidential and proprietary information regarding the Fatima's Grill Franchise System and not to work for any competitor for a period of two years. (Ex. 2, Nondisclosure and Non-Competition Agreement)

64.     But Defendant El Azaz continued to work for Defendants at the competing Lebanese-Mexican fusion restaurant operating at the former location of the Dearborn Fatima's Grill, in breach of this agreement.

65.     Upon information and belief, Defendant Mohammed Reda, Defendant Ali Reda's brother, agreed to manage the day-to-day operations of the new competing Lebanese-Mexican fusion restaurant, with knowledge of the existence of the Dearborn Franchise Agreement, the Guaranty and the Nondisclosure and Non-Competition Agreement.

66.     Defendants continued to operate the restaurant with Fatima's Grill Marks prominently displayed, causing significant confusion or misunderstanding among consumers as to whether or not the location is an authentic Fatima's Grill or associated in some manner with Fatima's Grill.

67.     The Fatima's Grill Franchise System and the new competing Lebanese-Mexican fusion restaurant, for all intents and purposes, share identical

business concepts and modeling.

68.     Both sell unique Lebanese-Mexican fusion cuisine, upon information and belief using the Fatima's Grill recipes and other Trade Secrets and Confidential Information stolen from Plaintiff.

69.     In furtherance of Defendants' scheme, and despite the termination of the Dearborn Franchise Agreement, Defendants continue to operate, for all intents and purposes, a Fatima's Grill.

**Franchisee Defendants' Breaches of Contract**

70.     Although Defendants altered their restaurant's name, upon inquiry, to "Stiletto Grill", they continue to benefit from their association with, and use of, the Fatima's Grill Marks, and are otherwise in violation of Franchisee Defendants' contractual obligations with Plaintiff.

71.     Pursuant to Section 8.6.1 of the Fatima's Grill Franchise Agreement, Franchisee Defendants expressly agreed that Harouf Corp would take no actions to engage in a competitive business, or "divert or attempt to divert any business, client, or potential client of the Fatima's Grill Business or any other System Business to any competitor … or to do or perform, directly or indirectly, any other act, injurious or prejudicial, to the goodwill associated with the Marks or the System."

72.     As set forth herein, Franchisee Defendants violated these covenants

by planning and taking steps to immediately open a competitive business in the same location.

73.    Pursuant to Sections 8.6.2 and 10.3 of the Fatima's Grill Franchise Agreement, Franchisee Defendants expressly agreed that upon termination of the Franchise Agreement, Harouf Corp would cease to operate a Fatima's Grill and not operate a competitive business (the "Post-Termination Covenants").

74.    Specifically, Section 8.6.2 of the Franchise Agreement provides:

You may not, for a continuous, uninterrupted period commencing upon the expiration, transfer or termination of this Agreement (regardless of the cause for termination), and continuing for two (2) years thereafter, either directly or indirectly, for yourself, or through, on behalf of, or in conjunction with any person, persons (including your spouse or any immediate family member, or the spouse or any immediate family member of any personal guarantor of this Agreement), partnership, limited liability company or corporation, own, maintain, operate, engage in, provide any assistance to, or have any interest in, any Competitive Business that is located: (i) at the Fatima's Grill Business; (ii) within twenty-five (25) miles of the Fatima's Grill Business; or (iii) within twenty-five (25) miles of any other System Business located then in existence or under construction.

(*See* Exhibit 1 at Section 8.6.2).

75.    Section 10.3 of the Franchise Agreement provides:

Upon termination of this Agreement for any reason, the parties will have the following rights and obligations:

(b)  You shall give the final accounting for the Fatima's Grill Business, pay Fatima's Grill within thirty (30) days after termination all payments due to Fatima's Grill, and return the Manual and any other property belonging to Fatima's Grill.

(c)     You shall immediately and permanently cease to operate the Fatima's Grill Business. You shall immediately and permanently stop using the Marks or any confusingly similar marks, the System, or any advertising, signs, stationery, or forms that bear identifying marks or colors that might give others the impression that You are operating a Fatima's Grill Business, You shall refrain from any statement or action that might give others the impression that You are or ever were affiliated with the Fatima's Grill Franchise Network.

(d)   You shall promptly sign any documents and take any steps that in the judgment of Fatima's Grill, are necessary to delete Your listings from classified telephone directories, disconnect, or, at Fatima's Grill's option, assign the Fatima's Grill all telephone numbers that have been used in the Fatima's Grill Business, and terminate all other references that indicate You are or ever were affiliated with Fatima's Grill or a Fatima's Grill Business.

(*See* Exhibit 1 at Section 10.3).

76.     The Franchise Agreement further provides:

Notwithstanding the provisions of Sections 11.7 and 11.8 of this Agreement, Fatima's Grill shall be entitled, with a bond of not more than $1,000, to the entry of temporary, preliminary and permanent injunctions, and orders of specific performance, enforcing the provisions of this Agreement in any court of competent jurisdiction relating to: (a) Your, and/or any of Your Related Party's use of the Marks; (b) Your confidentiality and non-competition covenants (Section 8); (c) Your obligations upon termination or expiration of the franchise; or (d) Transfer or assignment by You. If Fatima's Grill secures any such injunction (i.e. temporary restraining order, preliminary injunction, or permanent injunction) or order of specific performance, you agree to pay to Fatima's Grill an amount equal to the aggregate of Fatima's Grill's costs of obtaining such relief including, without limitation, reasonable attorneys' fees, costs of investigation and proof of facts, court costs, other litigation expenses, travel and living expenses, and any damages incurred by Fatima's Grill as a result of the breach of any such provision.

***

You recognize that You are a member of a Franchise Network and that Your acts and omissions may have a positive or negative effect on the success of other businesses operating under Fatima's Grill's Trade Name and in association with its Marks. Failure on the part of a single franchisee to comply with the terms of its Franchise Agreement is likely to cause irreparable damage to Fatima's Grill and to some or all of the other franchisees of Fatima's Grill. For this reason, You agree that if Fatima's Grill can demonstrate to a court of competent jurisdiction that there is a substantial likelihood of Your breach or threatened breach of any of the terms of this Agreement, Fatima's Grill will be entitled to an injunction restraining the breach or to a decree of specific performance, without showing or proving any actual damage and without the necessity of posting bond or other security, any bond or other security being waived hereby. Franchisor has the exclusive right to seek relief pursuant to this section in a court of competent jurisdiction as defined in section 11.2.2 of this Agreement or any other court of competent jurisdiction.

(*See* Exhibit 1 at Section 11.9.1 and 11.10).

77.    As a result of the termination of the Fatima's Grill Franchise Agreement, and pursuant to Franchisee Defendants obligations, Franchisee Defendants are required to abide by the post-termination obligations of the Dearborn Franchise Agreement, including the non-competition obligation, and are barred from operating a competitive business "either directly or indirectly, for [themselves], or through, on behalf of, or in conjunction with any person, persons … partnership, limited liability company or corporation" including Defendants Ali Reda, XOXO, Elmakaky, Chamali, Mohammed Reda, and El Azaz.

78.    As of the date of this filing, Defendants willfully continue to operate the formerly-franchised restaurant, under the name "Stiletto Grill" but with

Fatima's Grill Marks prominently displayed, in violation of the Post-Termination Obligations.

79.     Upon information and belief, at the time of filing the Fatima's Grill Marks remain on display inside the restaurant; as recently as October 17, 2023, Defendants were still prominently displaying the Fatima's Grill Marks on the exterior and interior of the restaurant:

 



80.    As a result, Plaintiff, which was able to change the phone number associated with the location, has been receiving approximately thirty to forty calls a *day* asking what happened to the Fatima's Grill location, and whether the competing business currently at the location or XOXO Hookah Lounge are affiliated with Fatima's Grill.

81.    Defendants' failure to abide by the Post-Termination Obligations required under the Dearborn Franchise Agreement and continued use of the Fatima's Grill Marks, Fatima's Grill Franchise System, and Trade Secrets and Confidential Information, in connection with the operation of a competitive Lebanese-Mexican restaurant at the site of the formerly-franchised restaurant, has caused, and is continuing to cause, irreparable harm.

82.    Pursuant to Section 11.12 of the Dearborn Franchise Agreement, amongst other provisions, Plaintiff is entitled to recover, as the prevailing party, its costs and expenses, including legal fees and expenses, in connection therewith.

83.    Pursuant to Section 6 of the Guaranty, Plaintiff is entitled to recover, as the prevailing party, its costs and expenses, including legal fees and expenses, in connection therewith.

84.    Additionally, as this is an exceptional case of trademark infringement based upon Defendants' deliberate, willful, and bad faith acts of infringement, the Plaintiff is also entitled to recover their attorney fees under 15 U.S.C. § 1117(a).

85.     Beginning on or around October 9, 2023, representatives of Plaintiff demanded multiple times that Defendants Harouf Corp, Gates and Ali Reda cease operating as a Fatima's Grill, cease using the Fatima's Grill Franchise System, surrender all Fatima's Grill Marks and Trade Secrets or Confidential Information in their possession, and cease competing in violation of the Dearborn Franchise Agreement and Guaranty.

86.     Defendants did not voluntarily cease their unlawful acts, thus necessitating the present lawsuit.

## COUNT I: TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

87.     Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

88.     Plaintiff spent substantial sums to promote, and generated substantial revenue and recognition from, the Fatima's Grill Marks, which are distinctive.

89.     The distinctive Fatima's Grill Marks became impressed upon the minds of the trade and public, which identifies the Fatima's Grill Brand products and services, as part of a national franchise, and consumers understand that the subject marks and logos indicate the source or origin of such products and services provided in connection with Lebanese-Mexican restaurants.

90.     Plaintiff has developed a growing, valuable franchise system through

its use of the Fatima's Grill Marks, and the reputation and goodwill in those marks is of great value to Plaintiff.

91.     Defendants used in commerce the Fatima's Grill Marks without Plaintiff' consent or authorization.

92.     Such use of the Fatima's Grill Marks is likely to confuse consumers into believing that Defendants and their restaurant are associated with, endorsed by, or sponsored by, Plaintiff (through its Fatima's Grill Franchise System and Brand) when they are not.

93.     Defendants' conduct constitutes false designation of origin, and unfair competition, in violation of the Lanham Act, 15 U.S.C. § 1125(a).

94.     As a result of Defendants' willful and intentional acts, Plaintiff incurred attorneys' fees and expenses.

95.     Defendants caused and, unless restrained by this Court, will continue to cause, irreparable harm, damage, and injury to Plaintiff.

96.     Plaintiff does not have another adequate remedy at law.

## COUNT II: TRADEMARK INFRINGEMENT
## (15 U.S.C. § 1114)

97.   Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

98.     Plaintiff owns a federal registration for the Fatima's Grill Marks in connection with its Lebanese-Mexican restaurant services, namely, U.S. Reg. No.

90593468 (the "Registration"), which registration is licensed to Plaintiff.

99.   The Registrations serve as prima facie evidence of the validity of the registered marks and of Plaintiff's ownership of the Fatima's Grill Marks and exclusive right to use the marks in commerce pursuant to 15 U.S.C. § 1115(a).

100.   Defendants used a colorable imitation of the registered marks in connection with the sale, offering for sale, distribution, and advertising foods and services in a manner likely to cause confusion, or to cause mistake, or to deceive.

101.   Defendants' conduct constitutes trademark infringement in violation of  Section 32 of the Lanham Act, 15 U.S.C. § 1114.

102.   Defendants' willful and intentional actions have caused, and unless restrained by this Court, will continue to cause irreparable harm and injury to Plaintiff.

103.   Plaintiff do not have another adequate remedy at law.

## COUNT III: TRADEMARK DILUTION
### (15 U.S.C. § 1125(c))

104.   Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

105.   The Fatima's Grill Marks are famous trademarks under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

106.   Defendants' action and conduct, as set forth herein, constitute dilution of the famous Fatima's Grill Marks under Section 43(c) of the Lanham Act, 15

U.S.C. § 1125(c).

107.   Plaintiff are entitled to injunctive relief under Section 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1).

108.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered and will continue to suffer irreparable damage to reputation and goodwill for which it has no adequate remedy at law.

109.   Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to recover damages from Defendants caused by their unlawful use of the Fatima's Grill Marks, in an amount to be determined at trial.

## COUNT IV: VIOLATION OF THE DEFEND TRADE SECRETS ACT
### (18 U.S.C. § 1839(3))

110.   Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

111.   Plaintiff's Trade Secrets and Confidential Information constitute trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1839(3).

112.   Plaintiff's Trade Secrets and Confidential Information are related to products offered at its franchised restaurants and by its Fatima's Grill system and Fatima's Grill Brand, which are used and intended for use in interstate commerce within the meaning of the DTSA, 18 U.S.C. § 1836(b)(1).

113.   Plaintiff's Trade Secrets and Confidential Information generate both actual and potential economic benefits and value, are not generally known to other persons or the public at large, and are not readily ascertainable by other persons by proper means.

114.   Plaintiff has taken reasonable steps and has made reasonable efforts to maintain the secrecy and confidentiality of its Trade Secrets and Confidential Information, including, but not limited to, requiring its franchisees to agree to maintain the confidentiality of this information.

115.   Defendants' actions constitute unlawful, willful, and malicious misappropriation of Plaintiff's Trade Secrets and Confidential Information in violation of the DTSA, in that Defendants have used and disclosed, or threatened to use and disclose, the Trade Secrets and Confidential Information in the operation of a competitive business, with full knowledge that this information was acquired under circumstances giving rise to a duty to maintain its secrecy.

116.   Under 18 U.S.C. § 1836(b)(3)(A)(i)-(ii), the Court may issue injunctive relief to prevent any actual or threatened trade secret misappropriation and requiring affirmative acts to protect trade secrets.

117.   Plaintiff is entitled to injunctive relief ordering Defendants to cease misappropriating Plaintiff's Trade Secrets and Confidential Information. Plaintiff has been, and continues to be, irreparably damaged by Defendants' violations of this

statute, and Plaintiff has no adequate remedy at law. Unless this Court enters an order requiring Defendants immediately and permanently to cease and desist from their unlawful use of Plaintiff's Trade Secrets and Confidential Information, Defendants unlawful conduct will continue to cause injury to Plaintiff and Plaintiff's Trade Secrets and Confidential Information will remain at risk of mishandling, misuse, and disclosure.

118.   Under 18 U.S.C. § 1836(b)(3)(B)-(C), Plaintiff is also entitled to damages caused by Defendants' misappropriation of its trade secrets, and because Defendants' misappropriation was willful and malicious, to an award of exemplary damages in an amount equal to two times actual damages.

## COUNT V: VIOLATION OF THE MICHIGAN UNIFORM TRADE SECRETS ACT
### (MCL § 445.1901 *et seq.*)

119.   Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

120.   Plaintiff's Trade Secrets and Confidential Information constitute trade secrets under Michigan's Uniform Trade Secrets Act, MCL § 445.1901 *et seq*. ("MUTSA").

121.   Plaintiff's Trade Secrets and Confidential Information generate both actual and potential economic benefits and value, are not generally known to other

persons or the public at large, and are not readily ascertainable by other persons by proper means.

122.   Plaintiff has taken reasonable steps and has made reasonable efforts to maintain the secrecy and confidentiality of its Trade Secrets and Confidential Information, including, but not limited to, requiring its franchisees to agree to maintain the confidentiality of this information.

123.   Defendants' actions constitute unlawful, willful, and malicious misappropriation of Plaintiff's Trade Secrets and Confidential Information in violation of the MUTSA, in that Defendants have used and disclosed, or threatened to use and disclose, the Trade Secrets and Confidential Information in the operation of a competitive business, with full knowledge that this information was acquired under circumstances giving rise to a duty to maintain its secrecy.

124.   Under MCL § 445.1903, the Court may issue injunctive relief to prevent any actual or threatened trade secret misappropriation and requiring affirmative acts to protect trade secrets.

125.   Plaintiff is entitled to injunctive relief ordering Defendants to cease misappropriating Plaintiff's Trade Secrets and Confidential Information. Plaintiff has been, and continues to be, irreparably damaged by Defendants' violations of this statute, and Plaintiff has no adequate remedy at law. Unless this Court enters an order requiring Defendants immediately and permanently to cease and desist from

their unlawful use of Plaintiff's Trade Secrets and Confidential Information, Defendants unlawful conduct will continue to cause injury to Plaintiff and Plaintiff's Trade Secrets and Confidential Information will remain at risk of mishandling, misuse, and disclosure.

126.    Under MCL § 445.1904, Plaintiff is also entitled to damages caused by Defendants' misappropriation of its trade secrets, including its actual losses caused by Defendants' misappropriation and the unjust enrichment caused by Defendants' misappropriation not taken into account in computing actual loss, or in the alternative, a reasonable royalty for Defendants' unauthorized disclosure or use of Plaintiff's Trade Secrets and Confidential Information.

## COUNT VI: UNFAIR TRADE PRACTICES IN VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT (MCL § 445.903 (as amended))

127.    Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

128.    Defendants use of the Fatima's Grill Marks violates section 3 of the Michigan Consumer Protection Act, MCL § 445.903 (as amended), because it constitutes an unfair, unconscionable, or deceptive practice by:

   a) Causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of Defendants goods and services;

   b) Representing that Defendants goods and services have the sponsorship

and approval of Fatima's Grill, which they do not, and representing that Defendants have the sponsorship and approval of Fatima's Grill, which they do not;

c) Representing that the Defendants services are of a particular standard, quality, or grade when they are of another; and

d) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes that represented or suggested state of affairs to be other than it actually is.

129.    Defendants have engaged in the unfair trade practices described above in the conduct of trade and commerce in connection with the operation of the competitive Lebanese-Mexican restaurant business they are operating at the site of the formerly-franchised restaurant and displaying Fatima's Grill signage confusing to the public.

130.    Upon information and belief, Defendants acts have been willful and deliberate.

131.    Plaintiff has been, and continues to be, irreparably damaged by Defendants violations of this statute, and Plaintiff has no adequate remedy at law. Unless this Court enters an order requiring Defendants immediately and permanently to cease and desist from their unlawful use of the Fatima's Grill Marks, Defendants unlawful conduct will continue to cause injury to Plaintiff and the public.

## COUNT VII: COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

132.    Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

133.    Defendants use of the Fatima's Grill Marks described above violates the Michigan common law of trademark infringement and unfair competition, because it constitutes willful and deliberate use in commerce of the Fatima's Grill Marks, which is likely to cause confusion, mistake, or deception as to the approval, origin, or sponsorship by Plaintiff of products and services provided by Defendants, and which accordingly constitutes unfair competition and infringement of the Fatima's Grill Marks.

134.    Upon information and belief, Defendants acts have been willful and deliberate.

135.    Plaintiff has been, and continues to be, irreparably damaged by Defendants' violations of common law, and Plaintiff has no adequate remedy at law. Unless this Court enters an order requiring Defendants immediately and permanently cease and desist from their unlawful use of the Fatima's Grill Marks, Defendants' unlawful conduct will continue to cause injury to Plaintiff and the public.

### COUNT VIII: BREACH OF CONTRACT – DEARBORN FRANCHISE AGREEMENT (Injunctive Relief)

136.    Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

137.    The Dearborn Franchise Agreement is a valid contract executed by Plaintiff and Defendant Harouf Corp.

138.    Defendant Harouf Corp and its officers and directors Defendants Gates and Ali Reda breached the Dearborn Franchise Agreement by continuing to use the Fatima's Grill Marks following termination of the Dearborn Franchise Agreement.

139.    Defendants breached the Dearborn Franchise Agreement by continuing to operate a Lebanese-Mexican restaurant at the site of the formerly-franchised Fatima's Grill restaurant, in violation of the covenants contained in the Dearborn Franchise Agreement.

140.    As a result of Defendants willful and intentional actions, Defendants caused and, unless restrained and enjoined by this Court, will continue to cause irreparable harm and injury to Plaintiff.

141.    Attorney fees and costs are permitted under the Dearborn Franchise Agreement.

### COUNT IX: BREACH OF CONTRACT– DEARBORN FRANCHISE AGREEMENT
### (Monetary Relief)

142.    Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

143.    The Dearborn Franchise Agreement is a valid contract executed by Plaintiff and Defendant Harouf Corp.

144.    Plaintiff has performed every obligation and condition required of them under the Dearborn Franchise Agreement.

145.    Under the Dearborn Franchise Agreement, Defendant Harouf Corp agreed to pay royalties throughout the term of the Dearborn Franchise Agreement.

146.    Additionally, Defendant is obligated to pay royalties and other fees, based on gross sales, through the remainder of the Dearborn Franchise Agreement.

147.    By virtue of Defendant Harouf Corp's unilateral termination of the Dearborn Franchise Agreement, Defendant harmed Plaintiff in an amount equal to the royalties Plaintiff would have received through the terms of the Dearborn Franchise Agreement, plus interest, late fees, attorney fees, and costs incurred by Plaintiff in connection with the collection and enforcement of the Dearborn Franchise Agreement.

### COUNT X: BREACH OF CONTRACT – GUARANTY
### (Injunctive Relief)

148.    Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

149.    Defendant Gates individually is a personal guarantor to the Dearborn Franchise Agreement pursuant to the Principal Owner's Guaranty.

150.    The Guaranty is a valid contract executed by Plaintiff and Defendant Eli Gates.

151.    Defendant Gates breached the Guaranty by continuing to use the

Fatima's Grill Marks following termination of the Dearborn Franchise Agreement.

152.    Defendant breached the Dearborn Franchise Agreement by continuing to operate a Lebanese-Mexican restaurant at the site of the formerly-franchised Fatima's Grill restaurant, in violation of the covenants contained in the Dearborn Franchise Agreement.

153.    As a result of Defendant's willful and intentional actions, Defendant caused and, unless restrained and enjoined by this Court, will continue to cause irreparable harm and injury to Plaintiff.

154.    Attorney fees and costs are permitted under the Guaranty.

## COUNT XI: BREACH OF CONTRACT - GUARANTY
### (Monetary Relief)

155.    Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

156.    Defendant Gates individually is a personal guarantor to the Dearborn Franchise Agreement pursuant to the Principal Owner's Guaranty.

157.    The Guaranty is a valid contract executed by Plaintiff and Defendant Eli Gates.

158.    Plaintiff has performed every obligation and condition required of them under the Dearborn Franchise Agreement.

159.    Under the Guaranty, Defendant Gates is jointly liable for Defendant Harouf Corp's breaches of contract as set forth herein.

160.    By virtue of Defendant's unilateral termination of the Dearborn Franchise Agreement, Defendant harmed Plaintiff in an amount equal to the royalties Plaintiff would have received through the terms of the Dearborn Franchise Agreement, plus interest, late fees, attorney fees, and costs incurred by Plaintiff in connection with the collection and enforcement of the Dearborn Franchise Agreement.

**COUNT XII: BREACH OF CONTRACT –
NONDISCLOSURE AND NON-COMPETITION
AGREEMENT
(Injunctive Relief)**

161.    Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

162.    The Nondisclosure and Non-Competition Agreement is a valid contract executed by Plaintiff and Defendant Ahmad El Azaz.

163.    Defendant El Azaz breached the Nondisclosure and Non-Competition Agreement by disclosing Fatima's Grill recipes and other Trade Secrets and Confidential Information to Defendants and by assisting in operating a Lebanese-Mexican restaurant at the site of the formerly-franchised Fatima's Grill restaurant, in violation of the covenants contained therein.

164.    As a result of Defendant's willful and intentional actions, Defendant caused and, unless restrained and enjoined by this Court, will continue to cause irreparable harm and injury to Plaintiff.

165.     Attorney fees and costs are permitted under the Nondisclosure and Non-Competition Agreement.

### COUNT XIII: BREACH OF CONTRACT - NONDISCLOSURE AND NON-COMPETITION AGREEMENT
### (Monetary Relief)

166.     Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

167.     The Nondisclosure and Non-Competition Agreement is a valid contract executed by Plaintiff and Defendant Ahmad El Azaz.

168.     Plaintiff has performed every obligation and condition required of them under the Nondisclosure and Non-Competition Agreement.

169.     Defendant El Azaz breached the Nondisclosure and Non-Competition Agreement by disclosing Fatima's Grill recipes and other Trade Secrets and Confidential Information to Defendants and by assisting in operating a Lebanese-Mexican restaurant at the site of the formerly-franchised Fatima's Grill restaurant, in violation of the covenants contained therein.

170.     By virtue of Defendant's breach of the agreement, Plaintiff suffered and will continue to suffer damages in an amount to be proven at trial, including, but not limited to, compensatory damages and consequential damages.

### COUNT XIV: TORTIOUS INTERFERENCE WITH CONTRACT

171.   Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

172.   The Dearborn Franchise Agreement and Principal Owner Guaranty (together, the "Agreements") are valid and enforceable contracts.

173.   Defendants Ali Reda, XOXO, Mohammed Reda, Elmakaky, Chamali, Mohammed Reda, and El Azaz knew of the existence of the Agreements.

174.   Defendants Ali Reda, XOXO, Mohammed Reda, Elmakaky, Chamali, Mohammed Reda, and El Azaz engaged in the intentional and improper conduct described herein, which induced Defendants Harouf Corp and Gates to breach various provisions of the Dearborn Franchise Agreement and Guaranty, including, but not limited to, the Post-Termination Obligations.

175.   Upon information and belief, Defendants Ali Reda, XOXO, Mohammed Reda, Elmakaky, Chamali, Mohammed Reda, and El Azaz are currently engaged, with Defendants Harouf Corp and Gates, in the management and operation of the competitive Lebanese-Mexican restaurant business they are operating at the site of the former Fatima's Grill franchise.

176.   As a result of Defendants Ali Reda, XOXO, Mohammed Reda, Elmakaky, Chamali, Mohammed Reda, and El Azaz's conduct, Defendant Harouf Corp breached the Dearborn Franchise Agreement with Plaintiff.

177.   As a result of Defendants Ali Reda, XOXO, Mohammed Reda,

Elmakaky, Chamali, Mohammed Reda, and El Azaz's conduct, Defendant Gates breached the Guaranty to Plaintiff.

178. Defendants Ali Reda, XOXO, Mohammed Reda, Elmakaky, Chamali, Mohammed Reda, and El Azaz's tortious interference caused Plaintiff to suffer irreparable injury and Plaintiff will continue to suffer irreparable injury unless Defendants are enjoined from further tortious interference with Defendant Harouf Corp and Gate's compliance with the terms of the Agreements.

179. The Nondisclosure and Non-Competition Agreement between Defendant El Azaz and Plaintiff is a valid and enforceable contract.

180. Defendants Ali Reda, XOXO, Mohammed Reda, Elmakaky, Chamali, and Mohammed Reda, knew of the existence of the Nondisclosure and Non-Competition Agreement.

181. Defendants Ali Reda, XOXO, Mohammed Reda, Elmakaky, Chamali, and Mohammed Reda engaged in the intentional and improper conduct described herein, which induced Defendant El Azaz to breach various provisions of the Nondisclosure and Non-Competition Agreement, including, but not limited to, the nondisclosure provisions and non-competition provisions.

182. As a result of Defendants Ali Reda, XOXO, Mohammed Reda, Elmakaky, Chamali, and Mohammed Reda's conduct, Defendant El Azaz breached his Nondisclosure and Non-Competition Agreement with Plaintiff.

183.     As a direct and proximate result of Defendants Ali Reda, XOXO, Mohammed Reda, Elmakaky, Chamali, Mohammed Reda, and El Azaz's tortious interference, Plaintiff suffered and will continue to suffer damages in an amount to be proven at trial, including, but not limited to, compensatory damages, consequential damages, and disgorgement of Defendants profits.

184.     Defendants Ali Reda, XOXO, Mohammed Reda, Elmakaky, Chamali, Mohammed Reda, and El Azaz intentionally and maliciously caused Defendant Harouf Corp to violate the in-term obligations and Post-Termination Obligations of the Dearborn Franchise Agreement and Defendant Gates to violate the Guaranty.

185.     Because Defendants maliciously interfered with Defendant Harouf Corp and Gate's compliance with the Agreements, Plaintiff is entitled to exemplary damages.

186.     Defendants Ali Reda, XOXO, Mohammed Reda, Elmakaky, Chamali, and Mohammed Reda intentionally and maliciously caused Defendant El Azaz to breach the Nondisclosure and Non-Competition Agreement.

187.     Because Defendants maliciously interfered with Defendant El Azaz's compliance with the Nondisclosure and Non-Competition Agreement, Plaintiff is entitled to exemplary damages.

## COUNT XV: REQUEST FOR PRELIMINARY INJUNCTION

188.    Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

189.    Plaintiff's application for injunctive relief is authorized by Fed. R. Civ. P. 65.

190.    Pursuant to Section 11.10 of the Dearborn Franchise Agreement, Defendant Harouf Corp acknowledged that its failure "to comply with the terms of its Franchise Agreement is likely to cause irreparable damage to Fatima's Grill and to some or all of the other franchisees of Fatima's Grill" and that therefore "Fatima's Grill will be entitled to an injunction restraining [any] breach or to a decree of specific performance."

191.    By operating a competitive business and utilizing the Fatima's Grill Marks in a manner that confuses, misleads, and/or deceives the public in order to solicit business for the competitive business, and disclosing and using Plaintiff's Trade Secrets and Confidential Information, Defendants are engaging and will continue to engage in competitive business operations that are in clear violation of the express terms of the Dearborn Franchise Agreement and in violation of the Lanham Act, the DTSA, and other state and federal law.

192.    As a result of Defendants' unauthorized and unlawful acts, Plaintiff is irreparably harmed and will continue to suffer irreparable harm.

193.   For the foregoing reasons, Plaintiff respectfully request that the Court grant the following injunctive relief:

A.   Enjoin Defendants Harouf Corp, Gates, Ali Reda, and El Azaz from breaching their respective non-competition covenants;

B.   Enjoin Defendants from using any of the Fatima's Grill Marks or any confusingly similar name, device, mark, service mark, trademark, trade name, slogan, or symbol to obtain revenue for the competing restaurant business, XOXO Hookah Lounge, or any other individual or company that is not a franchised business of Plaintiff;

C.   Enjoin Defendants from using any of Plaintiff's Trade Secrets and Confidential Information; and

D.   Enjoin Defendants from tortiously interfering with the Dearborn Franchise Agreement, the Guaranty, or the Nondisclosure and Non-Competition Agreement.

194.   Plaintiff has a high likelihood of success on the merits on its claims, and it is probably that it will recover from Defendants, as: (1) Defendants are openly and actively violating the Lanham Act;  (2) Defendant Harouf Corp is openly, actively, and materially breaching the express terms of the valid and enforceable Dearborn Franchise Agreement; (3) Defendant Gates is openly, actively, and materially breaching the express terms of the valid and enforceable Guaranty; (4)

Defendant El Azaz is openly, actively, and materially breaching the express terms of the valid and enforceable Nondisclosure and Non-Competition Agreement; (5) Defendants are openly and actively mishandling, misusing, and/or disclosing Plaintiff's Trade Secrets and Confidential Information; and (6) Defendants are openly and actively tortiously interfering with Defendant Harouf Corp's performance under the Dearborn Franchise Agreement, Defendant Gates' performance under the Guaranty, and Defendant El Azaz's performance under the Nondisclosure and Non-Competition Agreement.

195. Irreparable harm will result if a preliminary injunction is not issued because Defendants will continue to violate the Lanham Act, the DTSA, and other state and federal law, Defendants Harouf Corp, Gates, and El Azaz will continue to materially breach the express terms of the valid and enforceable agreements to which they are subject, and Defendants will continue to tortiously interfere with the aforementioned agreements, all of which will cause irreparable and irreversible harm to the goodwill and reputation that Plaintiff spent significant time and money establishing.

196. Plaintiff has no other adequate remedy at law because each Defendant refuses to cease his, her or its violations of law, material breaches of the express terms of the agreements, and/or other tortious conduct.

197. Defendant Harouf Corp waived any requirement that Plaintiff post

bond in the Dearborn Franchise Agreement.

198. The injury to Plaintiff outweighs any injury that may potentially be sustained by Defendants, collectively and/or each of them, as a result of the requested injunctive relief.

199. Injunctive relief will not adversely affect the public interest.

200. Defendants were served or are being served with notice of this application for injunctive relief.

## COUNT XVI:
## REQUEST FOR PERMANENT INJUNCTION

201. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

202. After a trial on the merits or a final judgment, Plaintiff asks the Court to convert any preliminary injunction as specified into a permanent injunction.

203. Plaintiff joined all presently known indispensable parties pursuant to Fed. R. Civ. P. 19.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A.    For the following injunctive relief:

   i.    Enjoin Defendants Harouf Corp, Gates, Ali Reda, and El Azaz from breaching their respective non-competition covenants;

   ii.   Enjoin Defendants from using any of the Fatima's Grill Marks or

any confusingly similar name, device, mark, service mark, trademark, trade name, slogan, or symbol to obtain revenue for the competing restaurant business, XOXO Hookah Lounge, or any other individual or company that is not a franchised business of Plaintiff;

iii.    Enjoin Defendants from using any of Plaintiff's Trade Secrets and Confidential Information; and

iv.    Enjoin Defendants from tortiously interfering with the Dearborn Franchise Agreement, the Guaranty, or the Nondisclosure and Non-Competition Agreement.

B.    For an accounting of Defendants revenues and profits for all sales made since October 9, 2023;

C.    For a monetary award against Defendants in excess of $75,000, to be proven at trial, including, but not limited to, compensatory damages, expectancy damages, punitive damages, exemplary damages, and disgorgement of profits;

D.    For a monetary award against Defendants for Plaintiff's attorney fees and costs, in an amount to be proven at trial;

E.    For pre- and post-judgment interest; and

F.    For such other relief as the Court deems just and proper.

Respectfully Submitted,

DELOOF, DEVER, EBY,
MILLIMAN & ISSA, PLLC

/s/ Samuel L. Estenson

Samuel L. Estenson (P82414)
301 N. Main St., 2nd Floor
Ann Arbor, MI 48104
(734) 994-1295
sle@deloofdevereby.com

Dated: October 31, 2023

Dated: October 31, 2023

## VERIFICATION

Susanne Elreda, being duly sworn, deposes, and says:

I am the operations manager of Plaintiff. I have read the foregoing Verified Complaint and know the contents thereof and state the allegations are true and correct. I base this verification on my own personal knowledge, except as to matters therein stated to be alleged upon information and belief, and to those matters, I believe them to be true and correct. The grounds of my knowledge, information, and belief, are derived from my position as operations manager, my personal involvement in the events underlying this litigation, and my general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of Plaintiff's records and conversations with Plaintiff's employees.

SUSANNE ELREDA

2

Scanned with CamScanner

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LATIFA & HALAL KITCHEN, LLC
a California limited liability company,

       Plaintiff,                          Case No.

v.                                         Hon.

HAROUF CORP, a Michigan domestic
profit corporation; ALI JADALLAH
REDA; MOHAMMED REDA; ELI
BAWAB GATES; XOXO
INVESTMENTS, LLC, a Michigan
limited liability company;
MOHAMED ELMAKAKY; RUAA
CHEMALI; and AHMAD M. EL AZAZ

       Defendants.

---

Samuel L. Estenson (P82414)
DEVER, EBY & ISSA, PLLC
*Attorneys for Plaintiff*
301 N. Main St., 2nd Floor
Ann Arbor, MI  48104
(734) 994-1295
sle@deloofdevereby.com

---

## **JURY DEMAND**

     NOW COMES Plaintiff Latifa & Halal Kitchen, LLC, by and through its

attorneys, DEVER, EBY & ISSA, PLLC, and hereby demands a trial by jury in the

above-captioned matter for all issues so triable.

Respectfully Submitted,

DELOOF, DEVER, EBY,
MILLIMAN & ISSA, PLLC

/s/ Samuel L. Estenson

Samuel L. Estenson (P82414)
301 N. Main St., 2nd Floor
Ann Arbor, MI 48104
(734) 994-1295
sle@deloofdevereby.com

Dated: October 31, 2023